UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

SHONTELL P. HECTOR                          CIVIL ACTION NO. 08-979

VERSUS                                      JUDGE MELANCON

MICHAEL J. ASTRUE,                          MAGISTRATE JUDGE HANNA
COMMISSIONER OF SOCIAL
SECURITY

*REPORT AND RECOMMENDATION*

Before the undersigned is an appeal of the Commissioner's finding of non-

disability and cessation of disability.  Considering the administrative record, the briefs of

the parties, and the applicable law, it is recommended that the Commissioner's decision

be **AFFIRMED** and the case be **DISMISSED**.

*Background and Findings*

Shontell P. Hector was born on November 18, 1977, and was 30 years old on the

date of the hearing before the Administrative Law Judge (ALJ) on January 22, 2008.

(R30, 483).  Hector had a 12th grade education in special education.  (R486).  She had no

relevant past work experience.  (R487).

According to the procedural history outlined by the ALJ and the record, Hector

was initially found disabled under Title II of the social security act as a child due to mild

mental retardation and behavior disorder. (R13, 27, 28).  That disability was determined

to have continued on March 20, 2002, based on mental retardation and attention deficit

1

disorder, attention deficit hyperactivity disorder.  (R13, 30).

On July 25, 2006, Hector filed an application for child's supplemental security income benefits under Title XVI, based on the record of deceased wage earner, Leo Hector, Sr., who died July 16, 2006.  (R13).  This claim was denied initially and on reconsideration.  (R13).

On December 20, 2006, it was determined Hector was no longer disabled as of December 1, 2006.  (R13, 31, 33).  Hector requested a hearing before the ALJ, and both the denial of the Title XVI claim and the termination of Title II benefits were joined for hearing before the ALJ. (R13).

After the hearing on January 22, 2008, the ALJ found Hector's disability ceased on December 1, 2006.  (R13).  However, under the doctrine of collateral estoppel, the ALJ found Hector was still under a disability and eligible for benefits under Title XVI, from her date of eligibility on July 16, 2006, until December 1, 2006, when her disability ceased.  (R13).  Therefore, the ALJ awarded Hector benefits under Title XVI, from July 16, 2006, through December 1, 2006, the date the ALJ found Hector no longer disabled.

The decision of the ALJ, issued on March 28, 2008, that Hector was no longer disabled as of December 1, 2006, is now before this court for review.

### *Assignment of Errors*

Hector appears to raise the following errors on appeal:

I.      The ALJ failed to fully develop the record regarding claimant's emotional problems and failed to find same met Listing 12.03;

II.     The ALJ erred in failing to find claimant's past ankle fracture and curvature of the spine a severe impairment;

III.    The ALJ's residual functional capacity is not supported by substantial evidence.

### *Standard of Review*

The court's review of the Commissioner's decision to terminate Social Security benefits is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  Johnson, 864 F.2d at 343.

### *Applicable Law and Commissioner's Findings*

In termination cases, the Commissioner may discontinue Social Security benefits if substantial evidence demonstrates that: (1) there has been medical improvement related to

an individual's ability to work and (2) the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f); 20 C .F.R. § 404.1594(a). Medical improvement is defined as any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable medical decision that the claimant was or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). The second part of the evaluation process relates to the ability to engage in substantial gainful activity. In making this determination, the Commissioner utilizes a 7 step sequential analysis for the termination of the Title XVI claim, and an 8 step sequential analysis for termination of the Title II claim.  (20 C.F.R. § 416.994(f) and 20 C.F.R. § 404.1594(f)).  The analysis is basically the same, except for the Title XVI claim, the performance of substantial gainful activity is not a factor used in the analysis.  The analysis for the Title II, and Title XVI, excepting the performance of substantial gainful activity, is as follows:

1.  is the claimant engaged in substantial gainful activity? (If so, the disability has ended).

2.  if not, does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1? (If so the disability is continuing).

3.  if not, has there been medical improvement?

4.  if there has been medical improvement, is it related to the claimant's ability do work?

5.  if there has been no medical improvement, or if the medical improvement is not related to the claimant's ability to do work, is one of the exceptions to medical improvement applicable? (If not, the disability is continuing).

6.    if there has been no medical improvement, or if the medical

improvement is not related to the claimant's ability to do work, or if one of the first group of exceptions is applicable, is the combination of impairments severe? (If not, the disability has ended).

7.    if so, is the claimant able to engage in past relevant work? (If so, the disability has ended).

8.    if not, is the claimant able to perform other substantial gainful activity?

See also Griego v. Sullivan, 940 F.2d 942, 944 n. 1 (5th Cir.1991).

In finding Hector no longer disabled under the eight-step sequential evaluation for the Title II claim and the seven-step sequential evaluation for the Title XVI claim,[1] the ALJ found the most recent favorable medical decision finding Hector disabled was issued on March 20, 2002, and serves as the "comparison point decision," or "CPD." (R15).  The ALJ found at the time of CPD, Hector had medically determinable impairments of mild mental retardation and attention deficit hyperactivity disorder (ADHD), which met listings 112.05(D) of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d). (R15).

In the cessation analysis, the ALJ found at the first step claimant had not engaged in substantial gainful activity. (R15).  At step two, the ALJ found claimant had severe

---

[1]The analysis is basically the same, but the "steps" are numbered differently, because step number one, whether claimant has engaged in substantial gainful activity, is not considered in the Title XVI analysis.  Therefore, step two for Title II is step one for Title XVI, and so on.  The step numbering will follow Title II only in this report, for simplicity.

impairments of major depression and polysubstance abuse, but these impairments did not

meet or equal the severity of any listed impairment under  20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 CFR 404.1520(d) and 416.920(d). (R15).   At step three, the ALJ found

medical improvement had occurred, as there had been a decrease in medical severity of

the impairments. (R16).  At step four, the ALJ found the medical improvement was

related to Hector's ability to work.  (R16).  Because the ALJ found the medical

improvement was related to Hector's ability to work, the ALJ did not address steps five

and six.  The ALJ found claimant had the following  residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that,
> beginning on December 1, 2006, the claimant has had the residual
> functional capacity to perform light work as defined in 20 CFR 404.1567(b)
> and 416.967(b) that does not require more than 1-2-3 step instructions, does
> not require contact with the general public or more than limited interaction
> with co-workers.

(R16).

At step seven, the ALJ found Hector had no past relevant work.  (R18).  At step

eight, with the aid of vocational expert testimony, the ALJ found Hector could perform

the representative occupations of light dishwasher, janitor, and light grounds

maintenance, and had the capacity to make a successful adjustment to work that existed in

significant numbers in the national economy.  (R19).  The ALJ then found Hector not

disabled as of December 1, 2006.  (R19).

### *Discussion*

I.      The ALJ failed to fully develop the record regarding claimant's emotional

problems, and failed to find same met Listing 12.03.

Hector argues her original disability determination was based on the listed impairment for mental retardation, Listing 12.05, and therefore her mental disorders were not adequately considered by the Social Security Administration at that time.[2]  Hector argues her problems with substance abuse and alcohol were attempts at self-medication for her mental disorders, which "are pervasive and unabated throughout her medical and mental record" and have not improved.[3]  Hector argues her mental problems meet or equal in severity a listed impairment, particularly Listing 12.03.

Listing 12.03 covers schizophrenic, paranoid and other psychotic disorders, and reads as follows:

> 12.03 Schizophrenic, paranoid and other psychotic disorders: Characterized by the onset of psychotic features with deterioration from a previous level of functioning.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one or more of the following:
>
> 1. Delusions or hallucinations; or
>
> 2. Catatonic or other grossly disorganized behavior; or
>
> 3. Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:
>
> a. Blunt affect; or

---

[2]Claimant does not argue that she meets the listing for mental retardation.  Her IQ scores were above listing level: verbal 75, performance 81, full scale 76.  (R17, 235).

[3]*Brief in Support of Plaintiff Claim for Benefits* (rec. doc. 9), p. 6.

b. Flat affect; or

c. Inappropriate affect;

OR

4. Emotional withdrawal and/or isolation;

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Counsel for plaintiff has not pointed the undersigned to any medical evidence suggesting that Hector's emotional problems, which the ALJ recognized as depression, would fall under Listing 12.03.  A psychological evaluation by Dr. Sanda B. Durdin Ph.D., a clinical psychologist, on November 15, 2006, did not find any of the listing 12.03 behaviors, such as delusions, hallucinations, or catatonia.  Dr. Durdin instead found Hector had a "Personality Disorder, NOS, Cluster B" and while she was not retarded, she experienced "Borderline Intellectual Functioning, versus Learning Disorder."  (R235).

8

Dr. Durdin further stated as follows:

> Affect and mood were basically normal.  She had passive aggressive
> undertones.  She also seems to thrive on negative experiences as if this is
> normal life.  Her memory is intact and her overall cognitive skills are
> adequate.  Her estimated level of intellectual functioning is considered to
> borderline, upper level.  Her evaluation results are valid.  She is a hardened
> individual who is poorly socialized.  She is an aggressive young woman
> with a long history of conduct disorder.  She is not mentally retarded.  She
> has had no treatment for any disorder in years and no medications.  (R235).

In addition to the evaluation by Dr. Durdin, there are, *inter alia*,  medical

records from Iberia Medical Center, Savoy Mental Health Center, Dauterive Hospital, and

a Psychiatric Review Technique Form that address Hector's emotional problems and

substance abuse issues.  In addition to extensive medical records that specifically address

these issues, the ALJ used a medical expert, Dr. Thomas Fain, to address Hector's

impairments.  Therefore, the the undersigned finds the ALJ did adequately develop the

record, and did not err in failing to find Hector had impairments that met listing 12.03.

Therefore, this assignment of error is without merit.

II.     The ALJ erred in failing to find claimant's ankle fracture and curvature of the
        spine severe impairments.

Hector argues the ALJ failed to address her past ankle fracture and curvature of the

thoracic spine as impairments that limit her ability to stand.  However, the ALJ

specifically addressed Hector's allegations of inability to stand for long periods due to her

past ankle fracture in 1999, as follows:

> She stated that she is unable to stand for long periods.  She got hit by a car
> in 1999. . . . She stated that she has trouble standing for long periods
> because of her leg but has not sought medical treatment for this.  (R17).

The ALJ acts within her discretion in determining the credibility of claimant's

subjective complaints and their severity, particularly in cases where the medical evidence

does not demonstrate a basis for the complained of severity.  Harrell v. Bowen, 862 F.2d

471, 479-82 (1988).

Hector has pointed to no records that indicate she sought any medical treatment for

her alleged inability to stand for long period of time due to her ankle problems and

curvature of the thoracic spine, and the ALJ found none.  The ALJ's determination that

Hector's alleged limitations were not credible was well within her discretion.  Therefore,

the ALJ's failure to find Hector's  past ankle fracture and curvature of the spine and their

alleged sequelae were severe impairments was not error.

III.  The ALJ's residual functional capacity was not supported by substantial evidence.

Claimant's argument that the ALJ's residual functional capacity was not supported

by substantial evidence is premised on the ALJ's failure to recognize Hector's alleged

impairment in her ability to stand for long periods of time, and the ALJ's failure to assign

limitations in accordance therewith.  As discussed above, the ALJ properly discredited

Hector's complaints regarding her inability to stand for long periods of time, due to the

lack of medical treatment sought for same. Furthermore, and contrary to Hector's

argument  that the vocational expert was not given any limitation regarding her ability to

stand, the ALJ specifically provided such a limitation in the hypothetical given to the vocational expert (Rec. 514). Even with this limitation, among others, the expert opined that there were jobs that Hector could perform and the ALJ was within her discretion to accept this opinion. Therefore, this assignment of error is without merit.

### *Conclusion and Recommendation*

For all the reasons given above, the undersigned finds that the ALJ's Decision that Hector was no longer disabled as of December 1, 2006, comported with relevant legal standards and was supported by substantial evidence.

Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED** and this matter be **DISMISSED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(c) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the**

**factual findings or the legal conclusions accepted by the District Court, except upon**

**grounds of plain error.  See Douglass v. United Services Automobile Association, 79**

**F.3d 1415 (5th Cir.  1996).**

Signed in Lafayette, Louisiana, this 26th day of February, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)